## No. 70.

FLORSHEIM BROS. vs. Z. HOWELL.   JOHN PHELPS & CO., INTERVENORS.

Under Act No. 66 of the Legislature of 1874 (Sec. 3), cotton bought at Shreveport and unpaid for by the purchaser, but shipped by him for New Orleans, is in the possession of the consignee the moment the bill of lading is given to the common carrier for transmission, and said consignee has, from that time, a pledge upon the cotton, superior to the vendor's privilege.

APPEAL from the First Judicial District Court, parish of Caddo. Taylor. J.

Wise & Herndon for Plaintiffs and Appellants.

Land & Land for the Intervenors and Appellees :

First—The vendor's privilege on movables gives him a preference if the property still remains in the possession of the purchaser. C. C. 3227. If the purchaser is divested of his possession, the privilege is lost. 11 R. 140; 5 An. 348; 8 An. 45; 12 An. 233, 235.

Second—A shipment of cotton to a merchant in New Orleans in accordance with Sec. 3, of Act No. 66 of 1874, divests the possession and the control of the shipper, and vests in the consignee a perfect pledge with the right to appropriate the proceeds of the sale to the payment of the amount due such consignee.

Third—It follows that plaintiffs' vendor's privilege was lost by the consignment to intervenors, who, as pledgees, are entitled to the possession and proceeds of the cotton sequestered.

The opinion of the Court was delivered by

TODD, J.   On the 7th of January, 1881, the plaintiffs sold to the defendant 28 bales of cotton, and delivered them the next day.

The defendant placed the cotton on board the "Kate Kinney," then lying at Shreveport, and consigned it to John Phelps & Co., of New Orleans.

Bills of lading were signed and issued by the agent of the steamer on the same day ; one of these bills, the shipper's bill, was delivered to the defendant, and the other, for the consignee, was retained by the boat.

On the 10th of January, the plaintiffs demanded of defendant the payment of the price of the cotton, who answered that he was "broke," and unable to pay.   Thereupon, they caused the cotton to be sequestered and taken from the boat, setting forth in their petition the sale

and delivery of the cotton, the non-payment of the price, and asking judgment for the same, with the recognition of the vendor's privilege.

This is the suit before us. John Phelps & Co. intervened in the suit, and first claimed a privilege on the cotton for advances made to the defendant by them, as factors. Subsequently, by an amendment to their petition, the intervenors' alleged that, at the time of its seizure by the plaintiffs, they were in the possession of the cotton as pledgees—the pledge being claimed under Sec. 3 of Act No. 66 of 1874, and also denied expressly that the cotton was subject to the vendor's privilege asserted by the plaintiffs.

The defendant made no defence, and the contest is entirely between the plaintiffs and intervenors upon the issues thus presented by the pleadings. There was judgment for the intervenors, and the plaintiffs have appealed.

Art. 3227 of the Civil Code provides : " He who has sold to another any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser, whether the sale was made on a credit or without, if the property still remains in the possession of the purchaser."

And article 3229: " If the sale was not made on credit, the seller may even claim back the things in kind, which were thus sold, as long as they are in possession of the purchaser; provided the claim for restitution be made within eight days of the delivery at farthest."

The privilege or preference accorded by these articles to the vendor of movable property, is, by their terms, effective only so long as the thing remains in the possession of the purchaser.

Was this cotton in the possession of the purchaser, the defendant in this case, when it was seized by the plaintiffs ? On the contrary, the intervenors say it was not, but that it was in their possession. The solution of the question thus presented depends upon the proper construction of the section of the Act of 1874, referred to, relied on by intervenors. The section reads as follows :

" That all merchants, factors and others who may have a general balance of account, or any sum of money due them by any consignor or other person sending them cotton, sugar or other agricultural products for sale at the port of New Orleans, or at any other town in the State, shall have a pledge upon all such property consigned or sent to them by ship, vessel, railroad or other carrier from the time the bill of lading or receipt therefor by the carrier, is deposited in the mail or given to the carrier for transmission, which pledge shall be perfect, with the right of sale of said property which shall be fully vested in said consignee, with the right to appropriate the proceeds of sale to the amount due consignee ; *provided* that nothing herein shall be so construed as to defeat

75

or lessen the privilege of the laborers and landlords in this State for wages and rent as now existing by law."

This section, and the entire act of which it is a part, makes striking and radical changes in the law on the subject of pledge, as it existed prior to the passage of the act.

The existence of the debt described, the consignment of the property, the mailing to the consignee or delivery to the carrier of a bill of lading, by the terms of the statute—independent of any agreement or even volition of the parties—creates the pledge, and, in the language of the act, a *perfect* pledge. What is meant by a perfect pledge? Evidently a pledge possessing all the elements and legal effects imparted to it by the general law. One of the essential ingredients of it under the general law is thus declared by the Code, Art. 3152: "It is essential to the contract of pledge that the creditor be put in possession of the thing given to him in pledge, and consequently that actual delivery of it be made to him, unless he has possession of it already by some other right."

It is not denied that the defendant was owing the intervenors a debt of the kind described in the statute for more than the value of the cotton, and as stated, it was consigned to them, a bill of lading retained by the carrier, and, if it was a perfect pledge, as the act declares it, then *eo instante*, upon the concurrence of the facts stated, by operation of law, the possession of the cotton was given to the intervenors as pledgees. If the pledgees were thus in possession, the possession of the defendant, as purchaser of the cotton,·ceased when that of the intervenors began. And, if the cotton was out of the defendant's possession—*the purchaser's possession*—and in the legal possession of others, then, under the law we have cited, the plaintiffs, as vendors, could no longer exercise their privilege against it, and their seizure was consequently unwarranted. This conclusion is inevitable under the terms of the law.

Much of the argument of plaintiffs' counsel is devoted to establishing the superior right of their clients to the cotton over the intervenors under the laws and settled jurisprudence of the State, before the existence of the Act of 1874 referred to; which authorities have been carefully reviewed and elaborately discussed in the able opinion of our learned brother of the District Court, found in the record. We deem it unnecessary to determine that question. It is really not before us. It came up properly under the original pleadings, where the rights of the parties under conflicting *privileges* were solely at issue; but that issue was supplanted by the graver one presented when the statutory pledge was set up by the intervenors in opposition to the vendor's privilege of the plaintiffs. Upon this issue the case must be decided, and our conclusion on the point has been stated.

It is ingenuously argued by the plaintiffs' counsel that there never was a sale of the cotton, that it was only an inchoate sale, an agreement to sell, to be complete only when the cotton was reweighed and the money paid, and that, by the custom of merchants at Shreveport, a purchaser is allowed three days within which to comply with these requirements. It is needless to say that a mere custom cannot prevail against the positive provisions of the law ; but this suggestion of no sale is contradicted by the theory of the suit, which is to enforce the *seller's* privilege, by the allegations of the petition and averments of the affidavit for the sequestration, which expressly declare that the cotton *was sold and delivered*, and, apart from the pleadings, this fact is confirmed by the evidence.

The conclusion stated was reached by us only after a careful study of the subject, the maturest deliberation, and under a full sense of the responsibility which a determination of the question involved. The law on which the decision rests may well be termed a hard law, but that law, hard as it is, *is thus written*, and written in language so plain as to leave no room for doubt or evasion. We have no power to change it ; it is only our province to expound it. It may well be said that it savors of spoliation, where the merchant who bought cotton or other agricultural products with his money, or the farmer who produced it by his toil, loses or is deprived of his property without compensation for the benefit of one, it may be, who has never paid a dollar on it, or given other consideration for it. If the law is unjust, or operates harshly, if it be deemed class legislation, the remedy is in the legislative department of the government. We may deplore the existence of a bad law, but as long as it exists it must be observed ; and should its enforcement by the judiciary entail hardship—as we know in this instance is the case—we can only repeat what is said above, " that it is so written."

Judgment affirmed.